CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 14, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Caroline M. Huber, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) ) Civil Action No. 5:24-cv-00041 |
| TIAA, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Caroline M. Huber, proceeding *pro se*, brought this action against her former employer, Defendant TIAA Insurance Co. ("TIAA"), alleging religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Huber claims that TIAA unlawfully denied her request for a religious exemption to the company's mandatory COVID-19 vaccination policy and then unlawfully terminated her employment when she did not comply with the policy.

This matter is before the court on TIAA's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 15.)  For the reasons stated below, the court will grant TIAA's motion. Huber's religious discrimination claims alleging failure to accommodate, wrongful termination, and hostile work environment will be dismissed without prejudice. Huber's retaliation claim will be dismissed with prejudice.

I. Background

**A. Factual History**

The facts in this section are taken from Huber's complaint and supporting exhibits. The court accepts them as true when resolving TIAA's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

Huber was employed by TIAA from April 2015 until her termination on May 1, 2022. (Compl. at 5 (Dkt. 1).) She initially worked as a Client Relationship Consultant, was promoted to Associate Wealth Management Advisor in January 2018, and was promoted to Wealth Management Advisor in March 2022, shortly before her termination. (*Id.*)

Huber's lawsuit arises from TIAA's enforcement of a mandatory COVID-19 vaccination policy. The vaccination policy, which TIAA adopted in November 2021, required employees to either provide proof of vaccination or request an exemption by December 31, 2021. (*Id.*) The policy applied to all employees, including those who, like Huber, were authorized to work remotely. (*See id.*) Employees who did not comply with the vaccination policy "would be terminated effective 3/1/2022." (*Id.*)

Huber requested an exemption from the vaccine requirement on December 20, 2021. (Def.'s Mem. in Support of Mot. to Dismiss Ex. A (Dkt. 16-1) [hereinafter "Accommodation Request Form"].)[1] She submitted the request using a TIAA-provided form titled "Religious Accommodation Request Form." (*Id.*) In the section of the form that asked her to explain

---

[1] TIAA attached Huber's accommodation request form to its motion to dismiss. The court "may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (cleaned up) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The accommodation request form meets this standard. Huber's complaint explicitly refers to her "exemption request," (Compl. at 5), her statements in the accommodation request form are integral to her failure-to-accommodate claim, and Huber does not challenge the form's authenticity.

- 2 -

her objection to the vaccine, Huber wrote: "Having recovered from COVID, I have God given natural immunity and object to any vaccinations."[2] (*Id.* at 2.) She further explained that she has "rejected all recommended vaccinations" for her "entire adult life." (*Id.*)

Another section of the accommodation request form asked Huber to provide additional information about her objections to vaccines and/or other medications. (*Id.* at 3.) In that section, she stated that she had "refused all recommended vaccinations," aside from one tetanus booster shot that a nurse administered "against [her] will in 1996." (*Id.*) Huber also noted that she has "consistently objected to all medications other than some antibiotics and a very low dose blood pressure [medicine]," which she takes "based on family history of heart attack and stroke." (*Id.*) Lastly, she stated that she has "declined any invasive procedures and tests, including any scans requiring injection of dyes." (*Id.*)

TIAA conducted a phone interview with Huber to discuss her exemption request. (Compl. at 5.) During the interview, she was "informed that the interviewer did not believe [her] beliefs were sincere." (*Id.*) The interviewer "repeatedly asked about [her] belief in 'God,' without acknowledgement of [her] belief of not allowing chemicals to be introduced into [her] blood." (*Id.*)

On February 8, 2022, Ned Godwin, TIAA's Vice President for Health and Wellness, informed Huber via email that her exemption request was denied. (*Id.*; Pl.'s Resp. Ex. C at 4–5 (Dkt. 18-3).) Godwin explained that TIAA did not believe it was obligated to make an exception to the vaccination policy in her case and told her she needed to provide proof of

---

[2] In her complaint, Huber states that she had COVID-19 in December 2020 and that a blood test in December 2021 "indicated that [her] antibody count was higher one year post infection than most individuals 6 months post vaccination." (Compl. at 5.)

- 3 -

vaccination or face termination. (Pl.'s Resp. Ex. C at 4.) Huber alleges that TIAA refused to accommodate her request because the company "wanted 100% compliance with the vaccine mandate." (Compl. at 5.)

On February 11, 2022, Huber sent an email asking TIAA to reconsider its decision denying her exemption request. (Pl.'s Resp. Ex. C at 2–3.) Her email included additional information about the beliefs underlying her objection to the COVID-19 vaccine. She wrote:

> My spiritual belief is that I should not put medication, including vaccines, into my body. I have consistently followed this belief throughout my adult life for over 35 years. Other than the one medication I have been taking consistently for over 20 years, due to a family history of high blood pressure and stroke, I do not take any other prescription medications nor have I consented to medical procedures that would include introducing a chemical or medication into my body. I also have not consented to any vaccinations, including those vaccinations recommended by my physicians. I consider this similar to individuals whose sincerely held religious beliefs require them to follow certain dietary restrictions.

(*Id.* at 3.) Huber argued that granting her an exemption would not "cause an undue hardship" to TIAA, given that she worked remotely "70–80% of the time" and had "remained active and productive while working remotely" during the COVID-19 pandemic. (*Id.*)

On February 21, 2022, Godwin emailed Huber to confirm that TIAA's decision had not changed. (*Id.* at 1.) Huber did not comply with the vaccination requirement. (*See* Compl. at 5; Pl.'s Resp. Ex. B at 2–3 (Dkt. 18-2).) After extending her termination date by two months, TIAA terminated her employment on May 1, 2022. (*Id.*)

On May 2, 2022, Huber filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (Compl. at 5.) The EEOC issued a Notice of Right to Sue letter on March 20, 2024. (Compl. Ex. 2 (Dkt. 1-2).)

### B. Procedural History

Huber filed this lawsuit against TIAA on June 12, 2024, within three months of receiving the Notice of Right to Sue letter from the EEOC. (Compl. at 7.) Huber's complaint alleges three theories of religious discrimination in violation of Title VII: denial of an accommodation, wrongful termination, and hostile work environment. (Compl. at 4–5.) She also alleges a claim for retaliation under Title VII. (*Id.*) She seeks damages for lost income, depleted savings, and mental and physical distress caused by her termination. (*Id.* at 6.)

On September 26, 2024, TIAA filed a motion to dismiss all of Huber's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. (Mot. to Dismiss at 1–2 (Dkt. 15)).) TIAA separately moved to dismiss for insufficient process under Rule 12(b)(4), insufficient service of process under Rule 12(b)(5), and lack of personal jurisdiction under Rule 12(b)(2) based on Huber's failure to serve a copy of her complaint along with a summons. (*Id.* at 2.) On October 28, 2024, the court ordered Huber to properly serve TIAA within fourteen days to avoid dismissal. (Dkt. 20); *see* Fed. R. Civ. P. 4(m). Huber served TIAA's attorneys of record with a copy of the summons and complaint on November 1, 2024. (Dkt. 21.)

### II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To avoid Rule 12(b)(6) dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In addition to the facts alleged in the complaint, the court may examine documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines*, 822 F.3d at 166. It also may consider documents submitted by the defendant if they are "integral to the complaint" and the plaintiff does not dispute their authenticity. *Goines*, 822 F.3d at 166.

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). When evaluating *pro se* litigants' claims, "courts routinely look beyond what [the] litigants identify as their 'complaint' and analyze the substance of any included documents." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024). That said, liberal construction does not "transform the court into an advocate" for *pro se*

parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.   Analysis

Title VII makes it an unlawful employment practice for an employer to "discharge" or otherwise "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] . . . religion." 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). Title VII also prohibits an employer from retaliating against an employee because she "has opposed any practice made an unlawful employment practice" or filed a charge of discrimination with the EEOC. *Id.* § 2000e-3(a).

Huber alleges that TIAA violated Title VII by failing to accommodate her request for an exemption to the mandatory vaccination policy,[3] wrongfully terminating her based on her religion, creating a hostile work environment, and subjecting her to retaliation. TIAA argues

---

[3] Huber's complaint does not clearly allege a failure-to-accommodate claim. She used a form complaint for Title VII claims, which allows the plaintiff to select the specific forms of alleged discriminatory conduct from a list of options. Huber checked the boxes for "Termination of my employment," "Unequal terms and conditions of my employment," and "Retaliation," but not the option for "Failure to accommodate my disability." (Compl. at 4.) But most of the facts alleged in her complaint focus on TIAA's refusal to grant her a religious exemption. (*See id.* at 5.) And Huber's response to the motion to dismiss further indicates that she intended to allege a failure-to-accommodate claim. TIAA construed her complaint to allege such a claim, and Huber does not disagree with that characterization in her response brief. Instead, she argues that she alleged a *bona fide* religious belief in support of that claim. (Pl.'s Resp. at 2–3.) For these reasons, the court will construe Huber's complaint to allege a failure-to-accommodate claim. *See Wall*, 42 F.4th at 218 ("[L]iberal construction [of *pro se* pleadings] allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority.").

that Huber has not alleged sufficient facts in support of any of these claims. (Def.'s Mem. in Support of Mot. to Dismiss at 1–2 (Dkt. 16) [hereinafter "Def.'s Mem."].) TIAA contends that Huber's retaliation claim also fails as a matter of law because she did not exhaust administrative remedies for that claim. (*Id.* at 12–14.) The court will address each of Huber's claims in turn.

### A. Failure to Accommodate

Under Title VII, an employer must "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (citation omitted). To establish a *prima facie* case for failure to accommodate under Title VII, a plaintiff must show that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Id.* "[W]hile a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks and citations omitted), *aff'd*, 566 U.S. 30 (2012).

Here, TIAA does not dispute that Huber satisfies the second and third elements. Rather, it argues that Huber has not plausibly alleged that her objection to the vaccine was based on a religious belief, as required by the first element. (Def.'s Mem. at 6–8.)

To qualify for protection under the first element, an employee's beliefs must be "sincerely held,"[4] *Consol. Energy*, 860 F.3d at 143, and "religious in nature," *Cox v. Valley Health Sys.*, No. 5:23-cv-00051, 2024 WL 3236414, at *3 (W.D. Va. June 28, 2024) (quoting *Ellison v. Inova Health Servs.*, 692 F. Supp. 3d 548, 558 (E.D. Va. 2023)). If an employee asserts a sincere religious belief, the court may not "question the correctness or even the plausibility of [the employee's] religious understandings." *Consol Energy*, 860 F.3d at 142, 143 n.3; *see Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). But courts routinely conduct a limited inquiry to determine whether a Title VII plaintiff's asserted beliefs are "religious in nature." *See, e.g., Cox*, 2024 WL 3236414, at *3–5. An employer is not obligated to accommodate an employee's mere "preferences." *Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001).

The Fourth Circuit has not yet adopted a clear framework for assessing whether an employee's beliefs are "religious in nature." When evaluating the nature of objections to vaccine mandates, this district and some others in the Fourth Circuit have found persuasive the factors the Third Circuit applied in *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981). *See, e.g., Gee v. Carilion Clinic*, No. 7:23-cv-00070, 2024 WL 4182705, at *4 (W.D. Va. Sept. 13, 2024); *Cox*, 2024 WL 3236414, at *3 n.3 (collecting cases); *Ellison*, 692 F. Supp. 3d at 557–58. The *Africa* framework considers whether an employee's professed beliefs "(1) 'address fundamental and ultimate questions having to do with deep and imponderable matters,' (2) are 'comprehensive in nature,' and (3) 'are accompanied by certain formal and external signs.'" *Gee*, 2024 WL 4182705, at *4 (quoting *Africa*, 662 F.2d at 1032). Other courts in the Fourth Circuit have conducted a more general inquiry that asks whether the plaintiff's belief is "based

---

[4] TIAA does not challenge the sincerity of Huber's beliefs. (*See* Def.'s Mem. at 6–8.)

on a system that is recognizably a religious 'scheme of things,' rather than secular morality or personal health, convenience, preference, or whim." *Shigley v. Tydings & Rosenberg LLP*, No. 23-02717, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024) (quoting *Welsh v. United States*, 398 U.S. 333, 339 1970)).

By any measure, Huber did not plausibly ground her accommodation request in any religious belief. To start, the information she included on her accommodation request form did little to notify TIAA that her objection to the COVID-19 vaccine was based on a belief that might be considered religious in nature. To be sure, the form was titled "Religious Accommodation Request Form," and it included several questions that asked the employee to describe her religious beliefs. (*See* Accommodation Request Form at 1–2.) But setting aside the framing of those questions, Huber's responses did not describe her objection to the vaccine in religious terms. When prompted to explain her objection, she wrote: "Having recovered from COVID, I have God given natural immunity and object to any vaccinations." (*Id.* at 2.) Her brief reference to "God given" immunity does not, by itself, suggest that the vaccine conflicted with her religious beliefs. *See, e.g.*, *Shigley*, 2024 WL 1156613, at *3 (stating that a plaintiff must do more than "expressly invoke[]" religion when communicating an objection to a vaccine requirement). The statement more accurately reflects a medical judgment about the benefits of the vaccine. *See, e.g.*, *Cox*, 2024 WL 3236414, at *5.

Huber's answers to the other prompts on the accommodation request form make no direct reference to religion at all. They state only that she "rejected all recommended vaccinations" for her "entire adult life," "consistently objected to all medications other than

- 10 -

some antibiotics and a very low dose blood pressure [medicine]," and "declined any invasive procedures and tests." (Accommodation Request Form at 2–3.)

Huber did elaborate on the grounds for her objection in her February 11, 2022 email to Godwin. She wrote: "My spiritual belief is that I should not put medication, including vaccines, into my body. I have consistently followed this belief throughout my adult life for over 35 years . . . I consider this similar to individuals whose sincerely held religious beliefs require them to follow certain dietary restrictions." (Pl.'s Resp. Ex. C at 3.) Still, this statement did not assert a belief that is religious in nature. Neither that nor any other statement Huber made to TIAA described how her views on vaccines and medication were part of a religious "scheme of things," *Shigley*, 2024 WL 1156613, at \*3, and they certainly did not articulate any "comprehensive" belief system, *Cox*, 2024 WL 3236414, at \*4 (quoting *Africa*, 662 F.2d at 1032). Her description of her beliefs as "spiritual" was only a conclusory allegation that her objection to the vaccine was religious. That is insufficient to trigger Title VII's protections. *Id.* (citing *Aliano v. Twp. of Maplewood*, No. 22-cv-5598, 2023 WL 4398493, at \*11 (D.N.J. July 7, 2023)).

This conclusion tracks the decisions courts have reached in similar cases. In *Shigley*, for example, the plaintiff's employer denied her request for an exemption to a COVID-19 vaccine mandate and then discharged her for failing to comply with the mandate. 2024 WL 1156613, at \*1–2. The court dismissed the plaintiff's failure-to-accommodate claim because she did not "identify *what* religion, if any, she subscribes to." *Id.* at \*4. While the plaintiff stated that the vaccine "had been developed and tested using tissue cell lines from involuntarily aborted fetuses" and that she found that practice "abhorrent and in violation of her religious views,"

- 11 -

the court held that her failure-to-accommodate claim failed because she did not explain how that objection "ties into her religious beliefs." *Id.* at *1, *4; *see also Ellison*, 692 F. Supp. 3d at 560 (holding that plaintiff failed to state that her opposition to a COVID-19 vaccine mandate was religious when she alleged only that she had "religious objections to abortion, and to receiving vaccines . . . produced using materials derived from abortion"). Like the plaintiffs in those cases, Huber did not provide any non-conclusory allegations that tied her "spiritual" objection to the vaccine to any religious scheme.

The court emphasizes that it is not questioning the merits of Huber's objection to the COVID-19 vaccine. As Huber correctly notes, a religious belief is entitled to protection under Title VII even if it is not "acceptable, logical, consistent, or comprehensible to others." *Cox*, 2024 WL 3236414, at *3 (citation omitted); *see also Welsh*, 398 U.S. at 339–40 (broadly defining a religious belief, for purposes of the federal conscientious objector statute, as any "sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by . . . God" for "traditionally religious persons"). But Huber has not alleged that her objections to the vaccination policy arose from *any* belief that might be considered religious, whether conventional or non-conventional. For that reason, the court will dismiss her failure-to-accommodate claim without prejudice.

### B. Wrongful Termination (Disparate Treatment)

Huber next alleges that TIAA "discriminated against [her] due to [her] religion" and identifies "[t]ermination of [her] employment" as one alleged form of discrimination. (Compl. at 4–5.) Because Huber framed this claim broadly, the court will construe it to allege a disparate-treatment theory of discrimination. *See, e.g.*, *Chalmers v. Tulon Co. of Richmond*, 101

- 12 -

F.3d 1012, 1017–19 (4th Cir. 1996) (analyzing Title VII claim for religious discrimination under both failure-to-accommodate and disparate-treatment theories). TIAA moves to dismiss this claim on the ground that Huber has not alleged she was treated differently than employees outside of her protected class.[5] (Def.'s Mem. at 1–2.)

To state a disparate-treatment discrimination claim, Huber must allege "that the employer treated her differently than other employees because of her religious beliefs." *Chalmers*, 101 F.3d at 1017 (emphasis omitted). A plaintiff may establish disparate treatment by offering direct evidence of discrimination or, in the absence of direct evidence, by satisfying a burden-shifting framework that resembles the one the Supreme Court adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chalmers*, 101 F.3d at 1017–18.

Here, Huber has not alleged direct evidence of discrimination,[6] so the court analyzes her disparate-treatment claim under the burden-shifting framework. To state a *prima facie* case under that framework, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. A plaintiff may allege different treatment under the fourth element by pointing to facts showing "that the

---

[5] TIAA also moves to dismiss Huber's disparate-treatment claim—as well as her hostile work environment claim—on the ground that she has not alleged membership in a protected class. (Def.'s Mem. at 8–10.) While it appears doubtful that Huber has plausibly alleged membership in a protected class, the court need not resolve that issue, as both claims fail under Rule 12(b)(6) for other reasons.

[6] Direct evidence of discrimination consists of "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Bandy v. City of Salem, Va.*, 59 F.4th 705, 711 (4th Cir. 2023) (citation omitted). Huber does not allege facts indicating that discriminatory animus played a role in her termination. Rather, she acknowledges that TIAA terminated her because of her non-compliance with the vaccination policy. (*See* Compl. at 5.) Huber does allege that the TIAA representative who interviewed her about her accommodation request questioned the sincerity of her beliefs and "repeatedly asked about [her] belief in 'God,' without acknowledgment of [her] belief of not allowing chemicals to be introduced into [her] blood." (*Id.*) But those statements relate to TIAA's denial of her accommodation request (and thus to her failure-to-accommodate claim). Huber does not allege any facts suggesting that the interviewer's comments "b[ore] directly" on her later termination. *Bandy*, 59 F.4th at 711.

- 13 -

employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 507 (D. Md. 2019) (quoting *Chalmers*, 101 F.3d at 1017).

As TIAA correctly points out, Huber has not alleged any facts that suggest TIAA treated her differently than other employees because of her religion. To the contrary, her complaint acknowledges that she was terminated because of her "refusal" to comply with TIAA's mandatory vaccination policy, which applied to "all employees." (Compl. at 5.) On those facts, the court cannot draw a reasonable inference of differential treatment. *See Schmidt v. Teachers Ins. & Annuity Ass'n of Am.*, No. 3:23-CV-00881, 2024 WL 3380152, at *3 (W.D.N.C. July 11, 2024) (dismissing disparate-treatment claim where employer's vaccine mandate and policy requiring termination for noncompliance "was made equally applicable to all employees" regardless of religion); *see also Caspersen v. W. Union, LLC*, No. 23-cv-00923, 2023 WL 6602123, at *11 (D. Colo. Oct. 10, 2023) (same).

In her response to the motion to dismiss, Huber states that "not all employees who did not comply [with the vaccination policy] were terminated on the same date," and she argues that this shows TIAA "treat[ed] all non-compliant employees differently." (Pl.'s Resp. at 3.) But even if the court considered that statement, it would not save Huber's claim, as she has not alleged any facts indicating that "other employees of a different religion, or no religion, received more favorable treatment" from TIAA. *Schmidt*, 2024 WL 3380152, at *3. Huber's complaint does not, for example, allege that any such employees "similarly declined to comply with the vaccination requirement and were permitted to keep their jobs, or that [she or her] protected class were singled out with respect to the vaccination requirement." *Caspersen*, 2023

- 14 -

WL 6602123, at *11. Accordingly, the court will dismiss Huber's wrongful termination claim based on disparate treatment without prejudice.

### C. Hostile Work Environment

Huber's Title VII hostile work environment claim focuses on the comments the TIAA representative made during the interview about her accommodation request. Huber claims that the representative expressed doubts about the sincerity of her beliefs and "repeatedly asked about [her] belief in 'God', without acknowledgment of [her] belief of not allowing chemicals to be introduced into [her] blood." (Compl. at 5.) TIAA argues that those comments do not plausibly qualify as the type of "severe or pervasive" harassment that is actionable under Title VII. (Def.'s Mem. at 10–11.)

To state a claim for hostile work environment under Title VII, Huber must allege that (1) she "experienced unwelcome harassment"; (2) the harassment was based on her protected class or protected activity; (3) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) "there is some basis for imposing liability on the employer." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (citation omitted).

To satisfy the third element, harassment must be so severe or pervasive to render the workplace hostile from both a subjective and objective standpoint. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). When evaluating whether harassing conduct qualifies as objectively severe or pervasive, the court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks omitted). Harassment "surely" meets this standard when it results in a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Id.* (quoting *Harris*, 510 U.S. at 21). But "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not amount to severe or pervasive harassment. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Huber's allegations do not clear the "high bar" needed to show severe or pervasive harassment. *Id.* The interviewer's comments during her accommodation request interview are the only communications identified in the complaint that *might* qualify as harassing conduct. They do not plausibly rise to the level of severe or pervasive harassment. Title VII does not prohibit employers from inquiring into the grounds for an employee's accommodation request. *See* EEOC Guidance No. CVG-2021-3, Religious Discrimination § 12-IV (2021) ("Where the accommodation request itself does not provide enough information to enable the employer to make a determination, and the employer has a bona fide doubt as to the basis for the accommodation request, it is entitled to make a limited inquiry into the facts and circumstances of the employee's claim that the belief or practice at issue is religious and sincerely held, and that the belief or practice gives rise to the need for the accommodation."). Even if the court assumed that some of the interviewer's statements were improper, this exchange is not the type of "extremely serious" single incident that may amount to severe or pervasive harassment. *Faragher*, 524 U.S. at 788. Standing alone, it does not support a reasonable inference that Huber's workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Sunbelt Rentals*, 521 F.3d at 315.

Because Huber has not plausibly alleged that she experienced severe or pervasive harassment based on her religion, the court will dismiss her hostile work environment claim without prejudice.

### D. Retaliation

Huber's final claim alleges that TIAA retaliated against her because of her request for an exemption to the vaccination policy. (Compl. at 4–5.) TIAA argues that Huber failed to exhaust her administrative remedies for this claim because she did not include it in the charge of discrimination she filed with the EEOC. (Def.'s Mem. at 12–14.) TIAA alternatively seeks dismissal on the ground that Huber does not state a plausible claim for retaliation. (*Id.* at 14–17.)

Before bringing a lawsuit alleging Title VII violations, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022); *see* 42 U.S.C. § 2000e-5(b). "The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." *Walton*, 33 F.4th at 172 (citation omitted). A plaintiff may include claims in her civil complaint if they are "reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022). Claims outside that scope are "procedurally barred." *Harker*, 33 F.4th at 172.

The court concludes that Huber's Title VII retaliation claim exceeds the scope of her EEOC charge and is not reasonably related to the claims she included in the charge.[7] (*See*

---

[7] TIAA attached a copy of Huber's EEOC charge to its motion to dismiss. (*See* Def.'s Mem. Ex. B (Dkt. 16-2).) The court will consider this document because it is integral to Huber's retaliation claim and Huber does not dispute its authenticity. *See, e.g.*, *Rhodes v. Montgomery Cnty. Dep't of Corr. & Rehab.*, No. 12-cv-03172, 2013 WL 791208, at *6 (D. Md.

Def.'s Mem. at 13.) Huber's EEOC charge alleged only that she "was discriminated against because of [her] religion (Sincerely Held Belief), by being denied an accommodation and by being discharged, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Def.'s Mem. in Support of Mot. to Dismiss Ex. B at 1.) It describes TIAA's denial of her request for an exemption to the vaccination policy and her subsequent termination, but it does not contain any facts suggesting that TIAA retaliated against her for engaging in protected activity. (*See id.*) And in the section of the charge titled "discrimination based on," Huber simply stated "Religion"—she did not allege retaliation for a protected activity. (*Id.*) In a very similar case, the Fourth Circuit held that a Title VII plaintiff failed to exhaust her administrative remedies because she "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation." *Miles v. Dell, Inc.*, 429 F.3d 480, 491–92 (4th Cir. 2005); *see also, e.g.*, *Kerney v. Mountain States Health All.*, 894 F. Supp. 2d 776, 780–81 (W.D. Va. 2012) (dismissing Title VII retaliation claim for failure to exhaust administrative remedies where the plaintiff, in her EEOC charge, alleged only age and disability discrimination, did not check the box for retaliation, and "did not mention retaliation at all").

In response to TIAA's failure-to-exhaust argument, Huber notes that her February 2022 email to Godwin "better articulate[d] her position of religious belief" and that she "also attended mediation through the EEOC post termination." (Pl.'s Resp. at 4.) But neither of those points demonstrates that her retaliation claim is "reasonably related to her EEOC charge and c[ould] be expected to follow from a reasonable administrative investigation" of the

---

Mar. 1, 2013) (considering an EEOC charge of discrimination attached to a motion to dismiss because the charge was integral to the complaint and its authenticity was undisputed).

charge. *Kerney*, 894 F. Supp. 2d at 780 (quoting *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012)). Huber's February 2022 email to Godwin occurred before she was terminated or filed the EEOC charge, and Huber has not indicated that she accused TIAA of retaliation at any point during the EEOC mediation proceedings. Reasonably interpreted, the allegations in Huber's EEOC charge concern Title VII discrimination based on her religious status—not retaliation.

Finally, Huber's retaliation claim would fail to withstand Rule 12(b)(6) scrutiny even if she had exhausted administrative remedies. Her complaint contains no factual allegations that suggest a causal link between her purported protected activity (her accommodation request) and her termination. Huber recognizes that her termination was the result of her "refusal to have the vaccine"; she does not identify any other, improper factors that played a role in the decision. (Compl. at 5); *see Schmidt*, 2024 WL 3380152, at *4 (dismissing Title VII retaliation claim for lack of causation where Plaintiff stated he was "involuntarily terminated, solely for his refusal to comply with TIAA's Vaccine Mandate"). Further, TIAA enacted the vaccination policy approximately one month *before* Huber submitted her accommodation request. (*See* Compl. at 5; Accommodation Request at 1.) "Courts regularly dismiss retaliation complaints in these circumstances, because the consequences for non-compliance with the policy were established before any alleged protected activity occurred." *Jorgenson v. Conduent Transp. Sols., Inc.*, Civ. No. SAG-22-01648, 2023 WL 1472022, at *6 (D. Md. Feb. 2, 2023) (collecting cases), *aff'd*, 2023 WL 4105705 (4th Cir. June 21, 2023).

Because Huber did not exhaust administrative remedies for her retaliation claim, the court will dismiss this claim. Dismissal with prejudice is appropriate because the deadline for

filing a charge to the EEOC has now expired. *See* 42 U.S.C. § 2000e-5(e). As such, "it is clear that amendment would be futile" as to this claim. *Cozzarelli v. Inspire Pharms.*, 549 F.3d 618, 630 (4th Cir. 2008).

## IV.    Conclusion

For the reasons stated above, the court will grant TIAA's motion to dismiss. Huber's retaliation claim will be dismissed with prejudice. Her failure-to-accommodate, disparate-treatment wrongful termination, and hostile work environment claims will be dismissed without prejudice. While TIAA asks the court to dismiss those claims with prejudice, the court concludes that without-prejudice dismissal is appropriate because Huber might be able to correct the deficiencies in those claims by pleading additional facts.

The court will grant Huber leave to amend as to the claims dismissed without prejudice. If she wishes to continue litigating those claims in this court, Huber must file an amended complaint within 21 days of the date of the court's accompanying Order. Otherwise, the court will dismiss the entire action with prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this <u>14th</u> day of November, 2024.

/s/ *Jasmine H. Yoon*
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE