CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Caroline M. Huber, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00041 |
| | ) | |
| TIAA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Caroline M. Huber, proceeding *pro se*, brought this action against TIAA Insurance Company ("TIAA"), her former employer, alleging religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. In an order entered on November 14, 2024, this court dismissed Huber's retaliation claim with prejudice, dismissed her religious discrimination claims without prejudice, and granted her leave to amend as to the discrimination claims. Huber's amended complaint alleges that TIAA committed religious discrimination by failing to accommodate her request for a religious exemption to the company's COVID-19 vaccine policy, wrongfully terminating her based on her religion, and creating a hostile work environment.

This matter is before the court on TIAA's motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 27). The motion will be granted in part and denied in part. In light of recent Fourth Circuit case law, the court concludes that the amended complaint alleges sufficient facts to state a failure-to-accommodate claim, and it will

deny TIAA's motion to dismiss as to that claim. The court concludes that the amended complaint fails to state a claim for wrongful termination or hostile work environment, and those claims will be dismissed with prejudice.

## I. Background[1]

Huber was employed by TIAA from April 2015 until her termination in May 2022. (Am. Compl. at 5 (Dkt. 24).) In November 2021, TIAA adopted a COVID-19 vaccination policy that required all employees to provide proof of vaccination or request an exemption by December 31, 2021. (*Id.*) Huber requested a religious exemption to the policy on December 20, 2021. (Def.'s Ex. A (Dkt. 28-1) [hereinafter "Accommodation Request Form"].) TIAA denied her exemption request and later discharged her on May 1, 2022, for failing to comply with the vaccination requirement. (Am. Compl. at 5.) Huber filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue letter on March 20, 2024. (Def.'s Exs. B, C (Dkts. 28-2, 28-3).)

Huber filed this lawsuit against TIAA on June 12, 2024. (*See* Compl. (Dkt. 1).) Her original complaint alleged that TIAA violated Title VII's prohibition on religious discrimination by denying her a religious exemption to the vaccination policy, wrongfully terminating her based on her religion, and creating a hostile work environment. (*Id.* at 4–5.) Huber also alleged a claim for retaliation in violation of Title VII. (*Id.*) She seeks damages for

---

[1] The facts alleged in Huber's amended complaint are accepted as true when resolving TIAA's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Huber's religious accommodation request form is attached as an exhibit to TIAA's second motion to dismiss. (*See* Def.'s Ex. A (Dkt. 28-1).) The court may consider the accommodation request form when resolving the motion to dismiss because it is integral to Huber's amended complaint, Huber expressly references it in the complaint, and Huber does not dispute its authenticity. (*See* Mem. Op. at 2 n.1 (Dkt. 22) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)); *see also Stroup v. Coordinating Ctr.*, No. MJM-23-0094, 2023 WL 6308089, at *2 n.3 (D. Md. Sept. 28, 2023) (considering a copy of the plaintiff's accommodation request form attached to the defendant's motion to dismiss for the same reasons).

lost income, depleted savings, and mental and physical distress caused by her termination. (*See id.* at 6.)

TIAA moved to dismiss Huber's original complaint under Rule 12(b)(6) for failure to state a claim on which relief may be granted. (Dkt. 15.) On November 14, 2024, the court granted the motion to dismiss. (Dkt. 23.) The court first held that the complaint did not state a failure-to-accommodate claim because it did not plausibly allege that Huber's objection to the COVID-19 vaccine was based on beliefs that were religious in nature. (Mem. Op. at 8–12.) Huber's religious accommodation request form briefly referred to her "God given natural immunity" from COVID-19 but never suggested the vaccine conflicted with her religious beliefs. (*Id.* at 10 (quoting Accommodation Request Form at 2).) Rather, her form merely stated that she rejected all recommended vaccinations and medications "other than some antibiotics and a very low dose blood pressure [medicine]" and that she also "declined any invasive procedures and tests." (*Id.* at 10–11 (quoting Accommodation Request Form at 2–3).) In a separate email asking TIAA to reconsider the denial of her exemption request, Huber alluded to her "spiritual belief" in not taking vaccines or other medication. (*Id.* at 11 (quoting Pl.'s Resp. Ex. C at 3 (Dkt. 18-3) [hereinafter "Huber Email"].) She explained that she had "consistently followed this belief throughout [her] adult life" and "consider[ed] this similar to individuals whose sincerely held religious beliefs require them to follow certain dietary restrictions." (*Id.* (quoting Huber Email at 3).) The court held that Huber's passing reference to a "spiritual belief" was too conclusory to support a reasonable inference that her objections to the COVID-19 vaccine were part of a religious "scheme of things." (*Id.* (quoting *Shigley v. Tydings & Rosenberg LLP*, No. 23-02717, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024)).)

- 3 -

The court held that the other claims alleged in Huber's original complaint also failed as a matter of law. It construed her wrongful termination claim to allege disparate-treatment discrimination. (*Id.* at 12–13.) The court dismissed that claim because Huber did not allege either direct evidence of discriminatory animus or that TIAA treated her differently than similarly situated employees with different religious beliefs. (*Id.* at 13–15.) In fact, the complaint acknowledged that TIAA's vaccination policy applied to all employees and that TIAA terminated Huber's employment because she refused to comply with that universal policy. (*Id.* at 14.) The court held that Huber's hostile work environment claim must also be dismissed. (*Id.* at 15–17.) That claim focused on a TIAA representative's comments during an interview about Huber's exemption request—she alleged that the interviewer expressed doubts about the sincerity of her religious beliefs. (*See id.*) The court held that the interviewer's alleged comments did not plausibly rise to the level of "severe or pervasive" harassment needed to establish a hostile work environment. (*Id.* at 15–16.) Finally, the court held that Huber had failed to exhaust administrative remedies for her Title VII retaliation claim because that claim was not reasonably related to any of the claims she had included in her EEOC charge of discrimination. (*Id.* at 17–19.)

The court dismissed Huber's retaliation claim with prejudice because the deadline for filing an EEOC charge had expired. (*Id.* at 19–20.) It dismissed her other claims without prejudice and granted her leave to file an amended complaint within 21 days of the court's November 14, 2024 order. (*Id.* at 20.)

Huber filed her amended complaint on December 4, 2024. (*See* Am. Compl.) The amended complaint omits the dismissed retaliation claim, re-alleges her discrimination claims,

and alleges additional facts about the beliefs that informed her objections to the COVID-19 vaccine and her discussions with the TIAA interviewer. (*See id.* at 4–6.) It asserts that Huber subscribes to "a faith based holistic healing process" promoted by the Optimum Health Institute in Southern California. (*Id.* at 5.) A page from the Optimum Health Institute's website, which Huber attaches as an exhibit to the amended complaint, describes the Institute as "a healing ministry of the Free Sacred Trinity Church, which promotes healing through the use of non-medical, all-natural, holistic healing practices." (Am. Compl. Ex. 1 (Dkt. 24-1).) The Institute offers "body, mind, and spiritual healing programs at [its] two retreat centers." (*Id.*)

Huber states that a family member referred her to the Institute after Huber had several negative medical experiences in her early 30s. (Am. Compl. at 5.) According to Huber, "[o]ne of the criteria for acceptance into their program is that if one seeks to heal themselves, they cannot have had any chemical intervention." (*Id.*) She further states:

> The Institute provides guidance on how to focus and cleanse ones [sic] mind, body and spirit to harness their healing power. Though their origins are rooted in a biblical God, they accept individuals from all religions and faith. My faith comes from the belief in a universal force and energy that surrounds us all. I draw upon this faith and spirit in my holistic healing. I believe that by introducing chemicals into my body, it interrupts the ability for my body to heal itself. I can compare this to a log laying on a railroad track, which can derail the train. By placing such chemicals into the body, it derails the ability for the body to rid itself of impurities and heal itself.

(*Id.* at 6.)

Huber alleges that she attempted to share information about the Optimum Health Institute with the TIAA interviewer "by providing an example of a close friend who had been diagnosed with cancer and encouraging her to look into the Institute." (*Id.* at 5.) The

- 5 -

interviewer allegedly construed her comments as expressing "distrust for the medical profession and [Huber's] personal preference" and "never asked questions about why [she] did not want to allow chemicals into [her] body" or "how [her] belief was 'religious' in nature." (*Id.* at 5–6.) Huber appears to allege that she described her belief in a universal force and energy as "God" during the interview "but did not imply it was a God in the biblical sense, which was the focus of the interviewer." (*Id.* at 6.) She claims she "felt harassed, frustrated and intimidated by the questioning" from the interviewer, who "repeatedly asked about [her] belief in 'God' in a biblical sense, without acknowledgment of [her] belief of not allowing chemicals to be introduced into [her] blood." (*Id.* at 5.)

On December 23, 2024, TIAA moved to dismiss the amended complaint under Rule 12(b)(6). (Dkt. 27.) TIAA argues that Huber failed to correct the pleading defects that led to the dismissal of her original complaint and asks the court to dismiss the three remaining claims with prejudice. (Def.'s Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. at 2–3 (Dkt. 28) [hereinafter "Def.'s Mem."].)[2]

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S.

---

[2] After Huber filed a response in opposition to the motion to dismiss and TIAA filed a reply in support, Huber filed a "response to [TIAA's] reply." (Dkt. 33.) Huber did not request leave to file a surreply, which is required under the Western District of Virginia's Local Civil Rules, so the court will not consider the arguments in her surreply when resolving TIAA's motion to dismiss. *See* W.D. Va. Civ. R. 11(c)(1). The court notes that Huber's surreply largely repeats the arguments in her first response in opposition, so declining to consider it will not affect the court's analysis.

544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In addition to the facts alleged in the complaint, the court may consider documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). It also may consider documents submitted by the defendant if they are "integral to the complaint" and the plaintiff does not dispute their authenticity. *Goines*, 822 F.3d at 166.

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). When evaluating pro se litigants' claims, "courts routinely look beyond what [the] litigants identify as their 'complaint' and analyze the substance of any included documents." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024). At the same time, though, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.    Analysis

Title VII makes it an unlawful employment practice for an employer to "discharge" or otherwise "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] . . . religion." 42 U.S.C. § 2000e-2(a)(1). In her amended complaint, as in her original complaint, Huber alleges that TIAA violated Title VII's prohibition on religious discrimination by failing to accommodate her request for an exemption to the COVID-19 vaccination policy, wrongfully terminating her employment based on her religion, and creating a hostile work environment. The court will address each claim in turn.

#### A.  Failure to Accommodate

Title VII broadly defines "religion" to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "Because this definition includes a requirement that an employer 'accommodate' an employee's religious expression, an employee is not limited to the disparate treatment theory to establish a discrimination claim. An employee can also bring suit based on the theory that the employer discriminated against her by failing to *accommodate* her religious conduct." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996) (emphasis in original). As the definition of "religion" reflects, Title VII requires an employer to "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (citation omitted).

To establish a *prima facie* case for failure to accommodate, a plaintiff must show that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Id.* "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks and citations omitted), *aff'd*, 566 U.S. 30 (2012).

Here, TIAA argues that Huber has not plausibly alleged that her objections to the vaccination policy were motivated by any religious belief. (Def.'s Mem. at 6–9.) "To qualify for Title VII protection, a plaintiff must show her professed belief is (1) sincerely held and (2) religious in nature." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 470 (4th Cir. 2025) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). TIAA does not expressly challenge the sincerity of Huber's beliefs about the COVID-19 vaccine,[3] but it argues that the amended complaint fails to show those beliefs were grounded in religion rather than her medical judgments and personal preference. (*See* Def.'s Mem. at 9.)

---

[3] The sincerity prong "seeks to determine an adherent's good faith in the expression of [her] religious belief and provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Barnett*, 125 F.4th at 470 (internal quotation marks omitted). Although TIAA does not clearly argue that Huber's beliefs are insincere, it does call attention to her statement that she takes some antibiotics and a blood pressure medication, which TIAA suggests shows that Huber does not consistently follow the Optimum Health Institute's ban on chemical intervention. (Def.'s Mem. at 9.) Even if TIAA intends to question the sincerity of Huber's beliefs, that issue would not provide grounds for dismissing her failure-to-accommodate claim. "[T]he inquiry into sincerity is almost exclusively a credibility assessment and can rarely be determined on summary judgment, let alone a motion to dismiss." *Barnett*, 125 F.4th at 470. The allegations in the amended complaint sufficiently allege that Huber's beliefs are sincere.

At the time this court dismissed Huber's original complaint, the Fourth Circuit had not adopted a clear framework for determining whether an employee's beliefs are "religious in nature." (*See* Mem. Op. at 9.)  Some district courts in the Fourth Circuit looked to the factors the Third Circuit applies, which consider whether the employee's professed beliefs "(1) 'address fundamental and ultimate questions having to do with deep and imponderable matters,' (2) are 'comprehensive in nature,' and (3) 'are accompanied by certain formal and external signs.'" *E.g.*, *Gee v. Carilion Clinic*, No. 7:23-cv-00070, 2024 WL 4182705, at *4 (W.D. Va. Sept. 13, 2024) (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981)).  Others applied a more limited test, asking whether the plaintiff's beliefs are "based on a system that is recognizably a religious 'scheme of things,' rather than secular morality or personal health, convenience, preference, or whim."  *Shigley v. Tydings & Rosenberg LLP*, No. 23-02717, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024) (quoting *Welsh v. United States*, 398 U.S. 333, 339 (1970)) (cleaned up).

Shortly after Huber filed her amended complaint, the Fourth Circuit clarified that courts evaluating religious discrimination claims should not rigorously examine whether a plaintiff's beliefs are "religious in nature."  *Barnett*, 125 F.4th at 470.  It confirmed that courts should limit the inquiry to "whether 'the beliefs professed . . . are, in the claimant's own scheme of things, religious[.]'"  *Id.* (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157–58 (2d Cir. 1984)); *see Seeger*, 380 U.S. at 185.  An employee's claim that her belief "is an essential part of a religious faith must be given great weight" in this analysis.  *Id.* (quoting *Patrick*, 745 F.2d at 157–58) (internal quotation marks omitted).  By relying on the Second Circuit's decision in *Patrick*, the Fourth Circuit appears to have "implicitly rejected" the Third Circuit's *Africa*

framework. *See Cox v. Valley Health Sys.*, No. CV EKD 23-00051, 2025 WL 711981, at *2 (W.D. Va. Mar. 5, 2025); *but see Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir. 1986) (citing the *Africa* decision when discussing the religious practices protected by the First Amendment's Free Exercise Clause). In *Patrick*, the Second Circuit described the *Africa* test as a "narrow definition of 'religious belief.'" *Patrick*, 745 F.2d at 159 & n.4. It explained that the correct test focuses on a plaintiff's subjective state of mind, which requires credibility determinations properly left to the factfinder. *Id.* at 159.

In *Barnett*, the Fourth Circuit applied this framework to reverse the dismissal of a Title VII failure-to-accommodate claim that, like Huber's claim, challenged an employer's denial of a religious exemption to a COVID-19 vaccine policy. *See Barnett*, 125 F.4th at 470–71. The plaintiff was a baptized Christian, and her exemption request stated that she believed "(1) it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it; (2) her religious reasons for declining the covid vaccinations . . . were based on her study and understanding of the Bible and personally directed by the true and living God; and (3) receiving the vaccine would be sinning against her body, which is a temple of God, and against God himself." *Id.* at 471 (internal quotation marks omitted); *see id.* at 468. The Fourth Circuit held that those statements plausibly demonstrated that the plaintiff's belief was "an essential part of a religious faith" that "must be given great weight," *id.* at 471 (quoting *Patrick*, 745 F.2d at 157–58), and that her objections to the vaccine were connected to that belief, *id.*

Applying the framework the Fourth Circuit endorsed in *Barnett*, this court finds that Huber has plausibly alleged the beliefs she communicated to TIAA were "religious in nature."

- 11 -

Huber's asserted faith, which "comes from the belief in a universal force and energy" and focuses on holistic healing, (Am. Compl. at 6), is different than the biblical Christianity employees often invoke when seeking exemptions to COVID-19 vaccine requirements, *see, e.g.*, *Barnett*, 125 F.4th at 470. But Title VII protects nonconventional as well as conventional religious beliefs—courts "are not free to reject beliefs because they consider them 'incomprehensible.'" *Seeger*, 380 U.S. at 185. And as the Fourth Circuit recognized in *Barnett*, federal regulations "define religious practices to 'include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'" 125 F.4th at 470 (quoting 29 C.F.R. § 1605.1 (2024)). While Huber has not offered many details about her religious practices, the court must give "great weight" to her statements that her professed views on holistic healing and vaccination are "an essential part of a religious faith." *Id.*

To be sure, it appears that Huber shared only limited information about her beliefs when she asked TIAA to exempt her from the vaccination policy. Other than the brief reference to her "God given natural immunity," Huber's accommodation request form did not disclose any further information about her religious beliefs. (Accommodation Request Form at 2–3.) Her later email correspondence with TIAA alluded to her "spiritual belief" in avoiding vaccines but did not elaborate on that belief. (Huber Email at 3.) In her amended complaint, however, Huber alleges that she "attempted to provide" information about the Optimum Health Institute, its holistic approach to healing, and its prohibition on "chemical

intervention" when the TIAA representative interviewed her about her exemption request.[4] (Am. Compl. at 5–6.) She further alleges that she told the interviewer about her belief in a universal force and energy, which she "referred to" as "God." (*Id.*) Viewed in the light most favorable to Huber, these allegations plausibly suggest she conveyed beliefs that were, in her "own scheme of things, religious." *Barnett*, 125 F.4th at 470. The amended complaint does not provide a clear or complete account of Huber's conversation with the TIAA interviewer, and it is possible that later fact development will show she did not communicate an objection that was based on a sincerely held religious belief. But the court finds that her allegations are sufficient to allow for discovery on this issue.

This result is consistent with other recent decisions that have applied *Barnett* when considering failure-to-accommodate claims. Following *Barnett*, district courts in the Fourth Circuit have "refrain[ed] from rigorously scrutinizing the objective religiosity of plaintiffs' beliefs" at the motion-to-dismiss and summary-judgment stages. *Harrah v. Lutheran Family Servs. of Va., Inc.*, No. 7:23-cv-00789, 2025 WL 957523, at *5 (W.D. Va. Mar. 31, 2025) (citing *Cox*, 2025 WL 711981, at *5; *Leonhartt v. MedStar Health, Inc.*, No. 1:23-CV-01211-JRR, 2025 WL 744077, at *9 (D. Md. Mar. 7, 2025); *Davis v. Reliance Test & Tech., LLC*, No. CV DKC 22-1760, 2025 WL 266664, at *6 (D. Md. Jan. 22, 2025)). In *Harrah*, the court allowed a failure-to-accommodate claim to proceed even when the plaintiff's exemption request "ma[de] no explicit reference to religion, spirituality, or a higher power" and did not "connect his stated

---

[4] TIAA argues that the court should focus exclusively on Huber's accommodation request form when determining whether her objections to the vaccination policy were religious in nature. (Def.'s Mem. at 7–8.) The court is not persuaded by that argument and will consider all of Huber's communications with TIAA concerning her request. *See Harrah v. Lutheran Family Servs. of Va., Inc.*, No. 7:23-cv-00789, 2025 WL 957523, at *5 (W.D. Va. Mar. 31, 2025) (considering employee's accommodation request *and* other communications to employer when evaluating a failure-to-accommodate claim).

beliefs to any specific faith practices," because the plaintiff's complaint "expand[ed] upon the religious basis for [his] beliefs and allege[d] that he explained the basis for his objection to his supervisor." *Id.* at \*5. Thus, although the plaintiff's allegations provided "limited factual support for the religious nature of [his] beliefs," the court held that *Barnett* "support[ed] allowing [him] the opportunity to develop a factual record to support his Title VII claim." *Id.* The same is true of Huber's failure-to-accommodate claim, and the court will allow it to move forward to discovery.

### B. Wrongful Termination (Disparate Treatment)

Huber's amended complaint, like her original complaint, identifies "[t]ermination of [her] employment" as another alleged form of religious discrimination. (Am. Compl. at 4; *see* Compl. at 4–5.) To the extent this claim differs from her failure-to-accommodate claim, the court will construe it to allege a disparate-treatment theory of discrimination. (*See* Mem. Op. at 12.) A plaintiff may establish disparate treatment by offering direct evidence of discrimination or, in the absence of direct evidence, by satisfying a burden-shifting framework that resembles the one the Supreme Court adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chalmers*, 101 F.3d at 1017–18.

Huber has not alleged any direct evidence that her termination was motivated by discriminatory animus, so the court will analyze her claim under the burden-shifting framework. To state a prima facie case under that framework, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. At the motion-to-dismiss stage, "a plaintiff need only plead

facts supporting a reasonable inference of discriminatory intent." *Barnett*, 124 F.4th at 471. A plaintiff may allege different treatment under the fourth element by pointing to facts showing "that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." *Chalmers*, 101 F.3d at 1017.

The court dismissed the disparate-treatment claim in Huber's original complaint because she did not allege that TIAA gave more favorable treatment to any similarly situated employee of a different religion or no religion. (Mem. Op. at 14–15.) Huber's amended complaint does not allege any additional facts that suggest TIAA treated any other employees differently when enforcing the vaccination policy. *Cf. Barnett*, 125 F.4th at 472 (holding that plaintiff alleged sufficient facts to support a reasonable inference of discriminatory intent when she claimed that the employer, when granting exemptions, treated employees with more prominent or conventional religious beliefs more favorably than employees with less well-known or respected religious beliefs); *Tansill v. Astrazeneca Pharms., LP*, No. 5:24-CV-545, 2025 WL 836570, at *2 (E.D.N.C. Mar. 17, 2025) (holding that plaintiff stated a disparate-treatment claim by alleging that the employer "provide[d] religious accommodations at higher rates to employees belonging to religious belief systems that differed from [plaintiff's] disfavored religious beliefs" and also "treated secular employees . . . more favorable than similarly situated employees"); *Cox*, 2025 WL 711981, at *4 (holding that plaintiff sufficiently alleged a disparate-treatment claim by providing information about at least one comparator employee). Because the amended complaint contains no allegations of disparate treatment, the court will grant TIAA's motion to dismiss Huber's wrongful termination claim.

The court will dismiss this claim with prejudice. Huber had an opportunity to allege additional facts to show disparate treatment after the court dismissed her original complaint, and her failure to do so demonstrates that allowing further amendment would be futile as to this claim. *See Cozzarelli v. Inspire Pharms.*, 549 F.3d 618, 630 (4th Cir. 2008).

## C. Hostile Work Environment

Huber's hostile work environment claim, as alleged in her amended complaint, continues to focus on the comments the TIAA representative allegedly made during the interview about her exemption request. She asserts that the representative questioned the sincerity of her beliefs and "repeatedly asked about [her] belief in 'God'" in a biblical sense, "without acknowledgment of [her] belief of not allowing chemicals to be introduced into [her] blood." (Am. Compl. at 5.) The amended complaint includes some allegations about the interview that did not appear in the original complaint. They allege that Huber "felt harassed, frustrated and intimidated by the questioning" and that "[t]he interviewer never asked questions about why [Huber] did not want to allow chemicals into [her] body, nor did she ask how [Huber's] belief was 'religious' in nature." (*Id.* at 5–6.)

To state a claim for hostile work environment under Title VII, Huber must allege that (1) she "experienced unwelcome harassment"; (2) the harassment was based on her protected class or protected activity; (3) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) "there is some basis for imposing liability on the employer." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (citation omitted).

To satisfy the third element, harassment must be so severe or pervasive to render the workplace hostile from both a subjective and objective standpoint. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). When evaluating whether harassing conduct qualifies as objectively severe or pervasive, the court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks omitted). Harassment "surely" meets this standard when it results in a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Id.* (quoting *Harris*, 510 U.S. at 21). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount" to severe or pervasive harassment. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

As the court previously held, the TIAA representative's alleged comments during the interview with Huber do not plausibly rise to the level of actionable harassment. While Huber's amended complaint adds allegations that she subjectively felt harassed by the interviewer's questioning, the new allegations do not come any closer to demonstrating harassment that could qualify as objectively severe or pervasive. The court therefore will grant TIAA's motion to dismiss the hostile work environment claim. As with the wrongful termination claim, the court will dismiss this claim with prejudice, as Huber was unable to allege additional facts that could remedy the pleading defects this court previously identified.

## IV. Conclusion

For the reasons outlined above, TIAA's motion to dismiss (Dkt. 27) will be **GRANTED** in part and **DENIED** in part. The motion will be **GRANTED** as to Huber's wrongful termination and hostile work environment claims, and those claims will be **DISMISSED with prejudice**. The motion will be **DENIED** as to Huber's failure-to-accommodate claim.

An appropriate Order will accompany this Memorandum Opinion.

ENTERED this __17th__ day of April, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE